## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| CRAIG ARMSTRONG, on behalf of himself and all others similarly situated, | ) ) |
| | ) CASE NO.  1:16-cv-844 |
| Plaintiff, | ) |
| | ) CLASS ACTION |
| v. | ) |
| | ) JURY DEMANDED |
| DEERE & COMPANY, | ) |
| | ) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

1.      Plaintiff and proposed class representative Craig Armstrong, by counsel, on behalf of himself and all others similarly-situated, brings this action against defendant Deere & Company, d/b/a John Deere (hereinafter, "John Deere"), to recover damages and to obtain injunctive relief for the claims identified in full below.

2.      As set forth in more detail below, the John Deere agricultural seed planters are designed and marketed by John Deere to simultaneously and evenly plant seeds and distribute fertilizer. In marketing these products, John Deere consistently claims that they provide even distribution and crop emergence, and recognizes that uneven distribution results in loss of crop yield.

3.      Despite John Deere's affirmative representations of even seed/fertilizer distribution and resulting crop emergence, these planters fail to evenly distribute fertilizer to the many rows they simultaneously plant due to a relatively recent physical alteration of the fertilizer delivery system, resulting in inconsistent crop emergence, decreased crop yields, wasted fertilizer, and other losses to the Plaintiff and the proposed class he seeks to represent.

4.      Plaintiff brings this case as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of a Class, defined more fully below, who purchased or leased John Deere planters that, due to a design flaw, did not evenly distribute fertilizer to each of the numerous distribution nozzles.

5.      John Deere knew or should have known that the planters did not produce even fertilizer distribution and emergence. Because of the marketing and representations that the planters produced even distribution and emergence even though John Deere knew otherwise, Plaintiff and class members purchased the planters and used them to plant crops. Due to the defect, the Plaintiff and class members wasted fertilizer and suffered a significant decrease in crop yield.

## PARTIES

6.      Plaintiff Craig Armstrong is a citizen and resident of the State of Indiana, residing in New Castle, Indiana. Armstrong purchased a new 1770NT John Deere planter in 2014 from a registered John Deere dealer in Greenfield, Indiana.

7.      Defendant Deere & Company is a Delaware corporation with its principal place of business in Moline, Illinois. Deere & Company transacts business in all fifty states and internationally.

## JURISDICTION & VENUE

8.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5 million, exclusive of interests and costs, and this is a class action in which class members are citizens of different states.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) & (c) because Defendant resides in this district and a substantial part of the events or omissions giving rise to the claims herein occurred within this district, including Defendant's breaches of express and implied warranties, breach of contract, commission of fraud, commission of tortious interference, violation of consumer and market protection statutes, and unjust enrichment for the planters.

10.     Defendant resides in this district for purposes of 28 U.S.C. § 1391 because it is subject to general personal jurisdiction in this district. Defendant has continuous and systematic contacts with Indiana, including this district, through selling products in Indiana to Indiana residents, including residents of this district. Defendant is also subject to specific personal jurisdiction in this district because its contacts with this district gave rise to the instant action.

11.     Venue is also proper in this court because Plaintiff is a citizen of Indiana who resides in and purchased a John Deere 1770NT planter in this district.

## FACTUAL ALLEGATIONS

12.      Plaintiff Craig Armstrong is an Indiana farmer. Armstrong had used John Deere planters for years without substantial problems. In 2014, however, Armstrong purchased a John Deere 1770NT planter for use on approximately 2,740 acres of land for the purpose of growing corn.

13.     The John Deere planters at issue not only seed the soil but also distribute liquid fertilizer at the time of such planting to increase yield.

14.     Modern farming is a complex scientific industry that requires precise measurements and calculations to maximize production and yield. Key components in this process, as recognized by John Deere in its marketing materials for its planters, are: "1) Achieving even emergence; 2) Achieving the correct plant population; 3) Achieving uniform

spacing; and 4) Planting within the optimum window." John Deere marketing materials have called these "the four key agronomic principles of planting."

15.     John Deere has marketed its planters as "[t]he only planter on the market that can offer even emergence, correct population, uniform spacing, and speed to get the most production within the optimum window."

16.     To Armstrong, like any farmer, even distribution and emergence is of the utmost importance. The amount of fertilizer used at the time of seed planting is calculated to provide the maximum yield. Consequently, where there is uneven distribution of fertilizer, the yield is impacted. If a crop row is deprived of the optimal amount of fertilizer, it will not reach its optimal yield. Where a row is over fertilized it will not increase the yield in that row and may actually cause a decrease in production in that specific row. Thus, where the distribution of fertilizer is uneven, the yield will invariably suffer and be inconsistent across rows.

17.     Armstrong purchased the John Deere 1770NT planter because John Deere promised in marketing materials and in documents that were part of the purchase contract that it would provide even distribution and emergence. Historically, these representations had been more or less accurate in Armstrong's experience.

18.     The planters use hoses to move the liquid fertilizer across the planter to ultimately be distributed in the numerous planting rows. Historically, each of the many fertilizer distribution nozzles on John Deere planters were connected to the fertilizer reservoir by hoses of equal lengths, despite those nozzles being varying distances from the reservoir. These hoses of equal lengths ensured that pressure in the lines was even, and that distribution of fertilizer to each nozzle was identical, which ultimately promoted even emergence.

19.     Starting with its 2014 model planters, John Deere changed that design by connecting fertilizer nozzles to the reservoir with hoses of varying lengths depending on the nozzles' distance from the reservoir.

20.     John Deere did not notify customers of the changes and used the same marketing that promised and emphasized even distribution and emergence.

21.     The John Deere 1770NT planter Armstrong purchased was among the planters containing these changes. The varying hose lengths resulted in uneven fertilizer distribution, such that the relative amount of fertilizer delivered to each nozzle on the planter varied in direct proportion to on its distance from the reservoir, with the most fertilizer delivered to the nozzles closest to the reservoir and least to those furthest away.

22.     The net result of this defect was uneven fertilizer distribution, uneven emergence and growth of crops, and, ultimately, decreased overall crop yield and profits.

23.     Armstrong discovered the uneven fertilizer distribution problem on and after April 20, 2014, only after he had planted approximately 2,740 acres of corn crops. Even if Armstrong had discovered the serious design flaw prior to planting his crops, the economic realities of farming deprived him and any similarly situated person from acquiring a different planter. As John Deere's marketing materials, discussed above, recognize that the science of farming permits narrow windows for seeding, necessitating use of even defective equipment to meet the tight window.

24.     Once Armstrong began using the planter on and after April 20, 2014, he discovered the problem and brought the defect to the attention of his John Deere dealer and to John Deere itself. John Deere representatives examined Plaintiff's planter and conducted numerous empirical tests on the planter. The results of those tests confirmed what Plaintiff

suspected: that the planter failed to evenly distribute fertilizer to the many nozzles, and that fertilizer distribution decreased in direct proportion to the length of the hose connecting each nozzle to the fertilizer reservoir.

25.     Despite its confirmation of the fertilizer distribution problem, and its knowledge that the planter did not conform to its express representations, John Deere did not fix the problem, offer to compensate Plaintiff for his wasted fertilizer and reduced crop yield, or otherwise take any corrective action.

26.     Armstrong is not alone. Each and every farmer in the proposed class who used planters with uneven hose lengths or that otherwise distributed fertilizer unevenly would necessarily have uneven fertilizer distribution when planting, which necessarily would have caused uneven emergence, decreased crop yield, and decreased profits.

## CLASS ACTION ALLEGATIONS

27.     Plaintiff brings this case pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on his own behalf and on behalf of the proposed Class, defined as:

> All persons or entities domiciled or residing in the United States who purchased or leased a new planter manufactured by Deere & Company that meet one or more of the following criteria:
>
> 1. The planter was model year 2014 or later and number 1770NT or 1775NT; and/or
>
> 2. The planter was model year 2014 or later and used fertilizer hoses of varying lengths to connect the distribution nozzles to the fertilizer reservoir; and/or
>
> 3. The planter otherwise did not evenly distribute fertilizer among each of the fertilizer distribution nozzles.

28.     The Class is comprised of thousands of purchasers and lessees of John Deere planters. Although the exact number of class members is presently unknown, the number and identity of class members can be readily determined through John Deere's records.

29.     The disposition of the numerous claims of these class members in a single class action will provide substantial benefits to all parties and to the Court.

30.     Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

31.     There is a well-defined community of interest in the questions of law and fact involved affecting the class members. The questions of law and fact common to the Class predominate over questions affecting only individual class members, and include without limitation the following:

A.     Whether the John Deere planters were inherently and permanently defective, due to uneven fertilizer distribution and crop emergence;

B.     Whether John Deere planters failed to perform in a manner consistent with Defendant's marketing and warranties, and with the Plaintiff's and class members' reasonable expectations;

C.     Whether and when John Deere knew of the defects in the design of its planters;

D.     Whether the design of John Deere planters constitutes a design defect;

E.     Whether John Deere knew or should have known of these defects prior to selling planters to Plaintiff and the class members;

F.     Whether John Deere had a duty to Plaintiff and the class members to disclose the defective nature of its planters;

G.      Whether the facts concealed and/or otherwise not disclosed by John Deere to Plaintiff and the class members are material facts;

H.      Whether John Deere knew or should have known that, due to the defects, the planters were not suitable for the purposes for which they were intended to be used, and otherwise were not as warranted and represented;

I.      Whether the planters were not as advertised and/or promoted by John Deere and its agents;

J.      Whether John Deere expressly warranted to original purchasers and lessees of the planters that it would repair, replace, or adjust all items on those planters that were defective in material, workmanship, or factory preparation;

K.      Whether John Deere expressly warranted to original purchasers and lessees of the planters that the planters would evenly distribute fertilizer;

L.      Whether John Deere breached its express warranties because it was unable or unwilling to successfully repair or otherwise remedy the defects with the planters purchased or leased by Plaintiff and class members;

M.      Whether John Deere breached its express warranties because Plaintiff and class members have been deprived of the value of the bargain;

N.      Whether John Deere breached its express warranties by selling and/or leasing planters that did not evenly distribute fertilizer;

O.      Whether John Deere impliedly warranted to original purchasers and lessees of the planters that those planters were merchantable and/or fit for a particular purpose;

P.      Whether John Deere breached its implied warranties of merchantability by selling Plaintiff and class members planters with inherent defects;

Q.      Whether Plaintiff and class members are entitled to compensatory damages for the diminution in the fair market value of their planters as a result of the common defect described herein, and the amount of such damages;

R.      Whether Plaintiff and class members are entitled to compensatory damages for the loss in crop yield and the waste of fertilizer as a result of the common defect described herein, and the amount of such damages;

S.      Whether John Deere should be required to compensate Plaintiff and class members for the cost of replacing the defective hoses and for otherwise correcting the defects, and the amount of such compensation;

T.      Whether Plaintiff and the class members are entitled to injunctive relief to remedy the defects; and

U.      Whether John Deere should be declared financially responsible for notifying all class members of the defective nature of its planters.

32.     Plaintiff's claims are typical of the claims of the Class. Plaintiff and class members have similarly suffered harm arising from John Deere's legal violations as identified in causes of action enumerated and set forth below.

33.     Plaintiff's and class members' claims flow, in each instance, from a common nucleus of operative facts – John Deere's legal violations as identified in causes of action enumerated and set forth below.

34.     Plaintiff is an adequate representative of the Class because his interests do not conflict with and are not antagonistic to the interests of the class members he seeks to represent. Plaintiff will fairly and adequately represent and protect the interests of the Class.

35.     Plaintiff has retained competent and experienced counsel.

36.     Plaintiff and class members have all suffered and will continue to suffer substantial harm and damages due to John Deere's conduct. A class action is superior to other methods for the fair and efficient adjudication of the subject controversy. Absent a class action, most class members likely will find the cost of litigating their individual claims to be prohibitive, and will have no effective remedy at all. Absent a class action, class members will continue to sustain damages, and John Deere's misconduct will proceed without remedy.

37.     The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Additionally, John Deere has acted, and failed to act, on grounds generally applicable to Plaintiff and the Class, requiring court imposition of uniform relief to insure compatible standards of conduct toward Plaintiff and the Class.

## CAUSES OF ACTION

38.     All facts alleged above as well as all facts alleged in each individual count are incorporated herein as though set forth in each individual count. No fact is to be read as though applying solely to an isolated section of this Complaint.

## COUNT I – BREACH OF CONSUMER &
## MARKET PROTECTION STATUTES

39.     John Deere knew or should have known that its planters did not evenly distribute fertilizer.

40.   John Deere knew or should have known that the uneven distribution of fertilizer from its planters resulted in uneven emergence.

41.   John Deere knew that the marketing materials and other express representations by it or its agents would lead prospective purchasers of its planters, including the Plaintiff and the class members, to believe that its planters would provide even distribution of fertilizer and to rely on these representations of even distribution and emergence.

42.   John Deere knew or should have known that its planters were not in conformity with its marketing materials and other express representations.

43.   John Deere knew or should have known that Plaintiff and the class members would and did rely on these representations of even distribution and emergence.

44.   John Deere intended that Plaintiff and the class members rely on representations of even distribution and emergence.

45.   John Deere's representations that its planters would provide even distribution and emergence was the basis of the bargain for the sale and/or lease of its planters.

46.   John Deere knew or should have known that its planters were not in conformity with the representations that it made to the world, Plaintiff, and the class members.

47.   John Deere knew or should have known that its planters were not of the kind, quality, and/or character that were represented to the world, Plaintiff, and the class members.

48.   John Deere has refused to cure the harm caused by the defect in its planters.

49.   John Deere's sale and/or lease of its planters in a defective condition not in conformity with the representations made by it and/or its agents was part of a scheme and/or artifice perpetrated with the intent to defraud and/or mislead Plaintiff and the class members.

50.     Plaintiff and the class members relied upon the representations of John Deere and/or its agents as outlined above.

51.     Plaintiff and the class members tendered money or other consideration to John Deere and/or its agents based upon these representations.

52.     John Deere's marketing and/or representations of the function and quality of its planters provide it an unfair market advantage over its competitors.

53.     Unless John Deere is prevented from continuing in its deceptive marketing practices, Plaintiff, class members, competitors, and other market participants will be injured in the future.

54.     Plaintiff and other members of the class, due to business necessity, must purchase new planters such as those at issue in this case on an annual basis.

55.     Plaintiff notified John Deere in writing of the defect in the fertilizer delivery system, and John Deere refused to remedy the situation.

56.     John Deere's actions violate consumer and market protection statutes of the fifty states, including, but not limited to, the statutes codified at Ind. Code § 24-5-0.5-1 *et seq*., Ala. Code § 8-19-1 *et seq*., Alaska Stat. § 45.50.471 *et seq*., Arizona Rev. Stat. § 44-1521 *et seq*., Ark. Code Ann. § 4-88-101 *et seq*., Cal. Civ. Code § 1750 *et seq*., Cal. Bus. & Prof. Code § 17200 *et seq*., Cal. Bus. & Prof. Code § 17500 *et seq*., Col. Rev. Stat. § 6-1-101 *et seq*., Conn. Gen. Stat. § 42-110A *et seq*., 6 Del. Code § 2513 *et seq*., 6 Del. Code § 2532 *et seq*., Fla. Stat. § 501.201 *et seq*., Ga. Code Ann. § 10-1-370 *et seq*., Ga. Code Ann. § 10-1-390 *et seq*., Haw. Rev. Stat. § 480 *et seq*., Haw. Rev. Stat. § 481A *et seq*., Idaho Civ. Code § 48-601 *et seq*., 815 Ill. Comp. Stat. 505/1 *et seq*., 720 Ill. Comp. Stat. 295/1A, 815 Ill. Comp. Stat. 510/1 *et seq*., 720 Ill. Comp. Stat. 295/1A, Iowa Code § 714H.1 *et seq*., Kan. Stat. Ann. § 50-623 *et seq*., Ky. Rev.

Stat. § 367.110 *et seq*., La. Rev. Stat. § 51:1401 *et seq*., Me. Rev. Stat. Ann. tit. 5 § 205-A *et seq*., Md. Code Com. Law § 13-101 *et seq*., Mass. Gen. L. ch. 93A § 1 *et seq*., Mich. Comp. Laws § 445.901 *et seq*., Minn. Stat. §§ 325F.67 *et seq*., Minn. Stat. § 325D.43-48 *et seq*., Minn. Stat. § 325F.68 *et seq*., Miss. Code Ann. § 75-24-1 *et seq*., Mo. Rev. Stat. § 407.010 *et seq*., Mont. Code Ann. § 30-14-101 *et seq*., Neb. Rev. Stat. § 59-1601 *et seq*., Nev. Rev. Stat. § 598.0903 *et seq*., N.H. Rev. Stat. Ann. § 358A:1 *et seq*., N.J. Stat. Ann. § 56:8-1 *et seq*., N.M. Stat. Ann. §§ 57-12-1 *et seq*., N.Y. Gen. Bus. Law §§ 349 & 350, N.C. Gen. Stat. § 74-1.1 *et seq*., N.D. Cent. Code § 51-15-02, Ohio Rev. Code Ann. § 1345.01 *et seq*., Ohio Rev. Code Ann. § 4165.01 *et seq*., Okla. Stat. tit. 15 § 751 *et seq*., 78 Okla. Stat. Ann. § 51 *et seq*., Or. Rev. Stat. §§ 646.605 *et seq*., 73 P.S. § 201-1 *et seq*., R.I. Gen. Laws § 6-13.1 *et seq*., S.C. Code Ann. § 39-5-10 *et seq*., S.C. Code Ann. § 56-15-10 *et seq*., S.D. Codified Laws § 37-24-6, Tenn. Code Ann. § 47-18-101 *et seq*., Tex. Bus. & Com. Code §§ 17.41 *et seq*., Utah Code Ann. § 13-11-1 *et seq*., Vt. Stat. Ann. tit. 9 § 2451 *et seq*., Va. Code Ann. 15 §§ 59.1-196 *et seq*., Rev. Code Wash. Ann. §§ 19.86.010 *et seq*., W. Va. Code § 46A-1-101 *et seq*., Wisc. Stat. § 110.18, and Wyo. Stat. §§ 45-12-105 *et seq*.

57.     The damages suffered by Plaintiff and the class members include, but are not limited to: the decreased market value of the planters; the decrease yield in crops; the cost to repair the defect; and the waste of fertilizer.

## COUNT II – BREACH OF EXPRESS WARRANTY

58.     John Deere is and was at all relevant times a merchant with respect to planters.

59.     In the course of selling the planters, John Deere expressly warranted in writing that all parts on the planters are covered by warranty.

60.     John Deere breached this express warranty to by failing to repair or replace the defective hoses and/or other parts of the planters when John Deere knew or should have known of the defective condition of the planters. John Deere has not repaired or adjusted the planters.

61.     In addition to this warranty, John Deere expressly warranted several attributes, characteristics, and qualities.

62.     These warranties are only a sampling of the numerous warranties that John Deere made relating to reliability and operation of the planters. Generally these express warranties promise superior performance, such as but without limitation: **"The only planter on the market that can offer even emergence, correct population, uniform spacing, and speed to get the most production within the optimum window."** These warranties were made, *inter alia*, in advertisements, in John Deere brochures, its website, and in uniform statements provided by John Deere to be made by salespeople. These affirmations and promises were part of the basis of the bargain between the parties.

63.     These additional warranties were also breached because the planters were not fully operational or reliable, nor did they comply with the warranties expressly made to purchasers or lessees. John Deere did not provide at the time of sale, and has not provided since then, planters conforming to these express warranties.

64.     Furthermore, the limited warranty of replacing defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and class members whole and because John Deere has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

65.     Accordingly, recovery by Plaintiff and class members is not limited to the limited warranty on parts, and Plaintiff and class members seek all remedies as allowed by law.

66.     Also, as alleged in more detail elsewhere in this Complaint, at the time that John Deere warranted and sold the planters it knew that the planters did not conform to the warranties and were inherently defective, and John Deere wrongfully and fraudulently misrepresented and/or concealed material facts regarding its planters. Plaintiff and class members were therefore induced to purchase the planters under false and/or fraudulent pretenses.

67.     Moreover, many of the damages flowing from planters cannot be resolved through the limited warranty on parts, as those incidental and consequential damages have already been suffered due to John Deere's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and class members' remedies would be insufficient to make Plaintiff and class members whole.

68.     Finally, due to John Deere's breach of warranties as set forth herein, Plaintiff and class members assert as an additional and/or alternative remedy, as set forth in U.C.C. § 2-608, as adopted by the fifty states, for a revocation of acceptance of the goods, and for a return to Plaintiff and to class members of the purchase and/or lease price of all planters currently owned and/or leased.

69.     As a direct and proximate result of John Deere's breach of express warranties, Plaintiff and class members have been damaged in an amount to be determined at trial.

**COUNT III – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

70.     John Deere was a merchant with respect to the planters within the meaning of U.C.C. § 2-104(1), as adopted by the fifty states.

71.     Under U.C.C. § 2-314, as adopted by the fifty states, a warranty that the planters were in merchantable condition was implied by law in the transactions when Plaintiff and class members purchased and/or leased the planters.

72.     The planters, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which the planters are used. Specifically, the unequal length of hoses and other causes for uneven distribution of fertilizer prevent the planters from meeting the essential functions of even distribution and emergence.

73.     John Deere was provided notice of these issues by numerous individual letters and communications sent by Plaintiff, class members and independent John Deere dealers.

74.     As a direct and proximate result of John Deere's breach of the implied warranty of merchantability, Plaintiff and class members have been damaged in an amount to be proven at trial.

### COUNT IV – REVOCATION OF ACCEPTANCE

75.     Plaintiff and class members had no knowledge of the defects described herein, were unaware of these defects, and reasonably could not have discovered them when they purchased and/or leased the planters from John Deere and/or its agents. On the other hand, John Deere was aware of the defects and nonconformities at the time of sale and thereafter.

76.     Acceptance was reasonably induced by the difficulty of discovery of the defects and nonconformities before acceptance.

77.     There has been no change in the condition of Plaintiff's and class members' planters not caused by the defects and nonconformities.

78.     Plaintiff and class members would suffer economic hardship if they returned their planters but did not receive the return of all payments made by them. Because John Deere would

refuse to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and class members have not re-accepted their planters by retaining them.

79.     These defects and nonconformities substantially impaired the value of the planters to Plaintiff and class members. This impairment stems from two basic sources. First, the planters fail in their essential purpose because they do not function in the very capacity that they are marketed as exceeding all other planters in functionality, namely in even distribution and emergence. Second, the parts warranty has failed its essential purpose because John Deere was aware of the defect and took no action to prevent Plaintiff or class members from using the planters in their defective condition, thereby generating damages well in excess of mere replacement costs.

80.     Plaintiff and class members provided notice of their intent to seek revocation of acceptance by a class-action lawsuit seeking such relief. In addition, Plaintiff and class members have requested that John Deere accept return of their planters and return all payments made. Plaintiff on behalf of himself and the Class hereby demands revocation and tender their planters.

81.     Plaintiff and class members would suffer economic hardship if they returned their planters but did not receive the return of all payments made by them. Because John Deere is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and class members have not re-accepted their planters by retaining them, as they must continue using them due to the financial burden of securing alternative means for an uncertain and substantial period of time.

82.     Consequently, Plaintiff and class members are entitled to revoke their acceptances, receive all payments made to John Deere, and to all incidental and consequential

damages, including the costs associated with purchasing properly functioning planters, and all other damages allowable under law, all in amounts to be proven at trial.

## COUNT V – TORTIOUS INTERFERENCE

83.    Plaintiff and class members had valid business relationships and reasonable expectancy of continued business relationships with purchasers of their crops.

84.    John Deere had knowledge of such relationships and/or possessed knowledge of facts and circumstances that would lead a reasonable person to believe that such relationships existed.

85.    John Deere intentionally or recklessly caused an interference with those business relationships.

86.    John Deere's interference was wrongful and illegal because, among other things, it was accomplished with fraud and was intentional. Additionally, John Deere's actions constitute violations consumer and market protection statutes as set forth above.

87.    John Deere's interference proximately caused damage to Plaintiff and class members.

88.    Plaintiff and class members are thus entitled to an award of compensatory damages and prejudgment and post- judgment interest.

89.    John Deere willfully and wantonly subjected the Plaintiff and class members to probable injury, with an awareness of such impending danger and with heedless indifference of the consequences. Punitive Damages are therefore warranted.

## COUNT VI – CONSTRUCTIVE FRAUD

90.    John Deere as the manufacturer and seller/lessor of the planters had a duty to inform Plaintiff and class members of known defects in the planters.

91.     John Deere marketed and represented the planters as providing even distribution and emergence despite knowing that the planters did not meet those representations.

92.     Plaintiff and class members relied upon the representations of John Deere and/or its agents that the planters would provide even distribution and emergence.

93.     Because Plaintiff and class members relied upon the representations of John Deere and/or its agents, Plaintiff and class members bought and/or leased planters that they would not have purchased or leased but for the misrepresentation.

94.     Because Plaintiff and class members relied upon the representations of John Deere and/or its agents, Plaintiff and class members used the planters to seed and fertilize their crops. The undisclosed defect caused Plaintiff and class members to suffer financial harm in the form of wasted fertilizer and decreased yield.

95.     John Deere gained an advantage in the form of receiving money and other consideration from Plaintiff and class members.

96.     John Deere gained an advantage in the marketplace by fraudulently representing that its planters were "[t]he only planter on the market that can offer even emergence, correct population, uniform spacing, and speed to get the most production within the optimum window[,]" when its planters were unable to provide the represented superiority.

97.     Justice requires that John Deere be disgorged of its ill-gotten gains and that Plaintiff and class members be compensated in full for the damages they have and will have suffered as a result of John Deere's fraudulent representations, misrepresentations, and omissions when it had a duty to speak.

## COUNT VII – COMMON LAW FRAUD

98.     John Deere either directly or through its agents represented to the world, Plaintiff, and class members that the planters provided even distribution and emergence.

99.     The planters were not capable of providing even distribution and emergence in the condition in which they were delivered to Plaintiff and class members.

100.    John Deere knew these representations were false or acted with reckless disregard to the truth with respect to the planters.

101.    John Deere made these representations either directly or through its agents for the purpose of increasing sales and convincing Plaintiff and class members to purchase the planters despite the planters not possessing the very quality they were advertised to have.

102.    Plaintiff and class members justifiably relied upon John Deere's representations in purchasing and/or leasing the planters.

103.    Because Plaintiff and class members relied upon the representations of John Deere and/or its agents, Plaintiff and class members bought and/or leased planters that they would not have purchased or leased but for the misrepresentation.

104.    Because Plaintiff and class members relied upon the representations of John Deere and/or its agents, Plaintiff and class members used the planters to seed their crops. The undisclosed defect caused Plaintiff and class members to suffer financial harm in the form of wasted fertilizer and decreased yield.

105.    John Deere's misrepresentations and omissions were the direct and foreseeable cause of the injuries to Plaintiff and class members.

## COUNT VIII – FRAUDULENT MISREPRESENTATION

106.    John Deere, either directly and/or through its agents, represented to the world, Plaintiff, and class members that the planters provided even distribution and emergence.

107.    The planters were not capable of providing even distribution and emergence in the condition in which they were delivered to Plaintiff and class members.

108.    John Deere knew these representations were false or acted with reckless disregard to the truth with respect to the planters.

109.    John Deere made these representations either directly or through its agents for the purpose of increasing sales and convincing Plaintiff and class members to purchase the planters despite the planters not possessing the very quality they were advertised to have.

110.    Plaintiff and class members justifiably relied upon John Deere's representations in purchasing and/or leasing the planters.

111.    Because Plaintiff and class members relied upon the representations of John Deere and/or its agents, Plaintiff and class members bought and/or leased planters that they would not have purchased or leased but for the misrepresentation.

112.    Because Plaintiff and class members relied upon the representations of John Deere and/or its agents, Plaintiff and class members used the planters to seed their crops. The undisclosed defect caused Plaintiff and class members to suffer financial harm in the form of wasted fertilizer and decreased yield.

## COUNT IX – BREACH OF CONTRACT

113.    Plaintiff's and class members' purchases and/or leases of the planters from John Deere and/or its agents constitute contracts.

114.    A basis of the bargain was the representation that the planters provide even distribution and emergence.

115.    Because the planters do not provide even distribution and emergence, John Deere has committed a material breach of the contract with Plaintiff and each class member.

116.    Plaintiff and class members have substantially complied with all obligations under the contracts.

117.    Plaintiff and class members have suffered damages in the diminished value of their planters, in the waste of fertilizer, and in the loss of crop yield.

118.    The damages of Plaintiff and class members are the reasonably foreseeable damages of purchasers of the planters.

### COUNT X – IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

119.    Implied into the contract for the purchase and/or lease of the planters between John Deere and Plaintiff and class members is the covenant of good faith and fair dealing.

120.    At all relevant times, John Deere knew or should have known that the planters did not conform to the marketing and representations made by John Deere and/or its agents.

121.    John Deere stood silent instead of informing Plaintiff and class members of the defective condition of the planters.

122.    Plaintiff and class members relied upon John Deere's silence in purchasing and using the planters.

123.    John Deere knew or should have known Plaintiff and class members would not discover the defect prior to using the planters to seed their crops.

124.    John Deere breached the covenant of good faith and fair dealing by remaining silent when it had material knowledge of the defective condition of the planters.

125.    Because John Deere stood silent, Plaintiff and class members suffered damages.

## COUNT XI – FRAUDULENT CONCEALMENT

126.    John Deere concealed and suppressed material facts concerning the quality and performance capabilities of its planters.

127.    John Deere concealed and suppressed material facts concerning the defects plaguing the planters, and John Deere valued cost-cutting over the functionality of its planters.

128.    John Deere did so in order to boost confidence in its planters and to falsely assure purchasers and lessees that its planters functioned in accordance with the marketing and representations by John Deere and/or its agents. The false representations were material to Plaintiff and class members because the representations played a significant role in the value of the vehicles.

129.    John Deere had a duty to disclose the defects in its planters because they were known and/or accessible only to John Deere; John Deere had superior knowledge and access to the facts; and John Deere knew or should have known the facts were not known to, or reasonably discoverable, by Plaintiff and class members.

130.    John Deere also had a duty to disclose because it made many general affirmative representations about the quality of the planters, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual defects in its planters. Having volunteered to provide information to Plaintiff and the class members, John Deere had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the planters purchased or leased by Plaintiff and class members. Whether a manufacturer's products are reliable are material concerns to a consumer.

131.    John Deere actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost John Deere money, and it did so at the expense of Plaintiff and the class members.

132.    On information and belief, John Deere has still not made full and adequate disclosure and continues to defraud Plaintiff and class members and conceal material information regarding defects that exist in the planters.

133.    Plaintiff and class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased and/or leased the planters; and/or would have fixed the defect prior to using the product to their detriment in planting their crops; and/or not paid the same price elevated by the representation of performance; and/or would have taken other affirmative steps. Plaintiff's and class members' actions were justified. John Deere was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or class members.

134.    Because of the concealment and/or suppression of the facts, Plaintiff and class members sustained damage because they own planters that diminished in value as a result of John Deere's concealment of, and failure to timely disclose, the defects. Plaintiff and class members also sustained damages because they used the planters to plant crops causing a waste in fertilizer and a decrease in crop yield.

135.    Had they been aware of the concealed defects that existed in the planters, Plaintiff and class members either would have paid less for their planters and/or would not have purchased and/or leased them at all; and no class members, regardless of time of purchase and/or lease, would have used the planters in their defective condition to plant their crops.

136.    Accordingly, John Deere is liable to Plaintiff and class members for damages in an amount to be proven at trial.

137.    John Deere's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and class members' rights and well-being to enrich John Deere. John Deere's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT XII – UNJUST ENRICHMENT/QUANTUM MERUIT

138.    John Deere has received and retained a benefit from Plaintiff and inequity has resulted.

139.    John Deere has benefitted from selling and/or leasing the planters whose value was artificially inflated by John Deere's concealment of the defects described throughout this Complaint, and Plaintiff and class members have overpaid for the planters and been forced to pay other costs.

140.    Plaintiff and class members, therefore, conferred a benefit on John Deere.

141.    It is inequitable for John Deere to retain these benefits.

142.    Plaintiff and class members were not aware of the true facts about the planters, and did not benefit from John Deere's conduct.

143.    John Deere knowingly accepted the benefits of its unjust conduct.

144.    As a result of John Deere's conduct, the amount of its unjust enrichment should be disgorged, in an amount to be proven at trial.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests an order certifying this matter as a class action with Plaintiff as class representative and his counsel as class counsel; and entry of a judgment in favor of Plaintiff, including an award of all available common-law and statutory damages, pre- and post-judgment interest, injunctive relief, punitive damages, attorneys' fees, costs, and all other just and proper relief.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a jury trial on all of his claims.

Respectfully submitted,

WAGNER REESE, LLP

/s/ *Stephen M. Wagner*
Stephen M. Wagner, Atty. No. 18248-49
Jason R. Reese, Atty. No. 20330-64

WAGNER REESE, LLP
11939 North Meridian Street
Carmel, IN  46032
Tel:     (317) 569-0000
Fax:     (317) 569-8088
Email:  swagner@injuryattorneys.com