UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CRAIG ARMSTRONG on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DEERE & COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Case No. 1:16-cv-00844-TWP-MPB<br>)<br>)<br>)<br>)<br>) |

## ORDER ON MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed by Defendant Deere & Company ("Deere"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (Filing No. 24.) On August 15, 2016, Craig Armstrong, on behalf of himself and all other similarly situated consumers ("Armstrong"), filed an Amended Complaint against Deere, asserting fifteen tort- and contract-based claims relating to misrepresentations and defective design of a John Deere seed planter that he purchased in 2014. (Filing No. 21.) For reasons set forth below, the Motion to Dismiss is **granted in part and denied in part.**

### I. BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts alleged in the Amended Complaint, and draws all possible inferences in Armstrong's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

Armstrong is a farmer and resident of Indiana. In 2014, he purchased a new John Deere 1770NT seed planter ("the Planter") from an authorized Deere dealer in Greenfield, Indiana. The

benefit of the Planter, as well as other models of Deere planters is that the machines plant seeds in the soil and distribute liquid fertilizer at the time the seeds are deposited in the soil. Throughout the years, Armstrong used other models of Deere planters without any substantial problems. In 2014, however, Deere changed the design of its planters and created the Planter at issue. Similar to prior models, the Planter is constructed with hoses that connects the fertilizer nozzles to the fertilizer reservoir. The hoses are used to move liquid fertilizer across the Planter in order to distribute the fertilizer to the crops. Unlike prior models, however, the Planter was equipped with hoses of various, rather than equal, lengths.

Deere did not notify customers of this change in design. On April 20, 2014, after Armstrong planted approximately 2,740 acres of corn crops, he discovered that the Planter failed to evenly fertilize the crop. He informed his local authorized Deere dealer that the Planter contained a defect. The dealer examined the Planter and informed Armstrong that the Planter failed to evenly distribute fertilizer due to the varying lengths of the hoses. The dealer, however, did not offer to compensate Armstrong or fix the distribution problem. The net result of the defect was uneven fertilizer distribution, uneven emergence and growth of crops, and, ultimately, decreased overall crop yield and profits.

On August 15, 2016, Armstrong filed an Amended Complaint against Deere, alleging the Planter does not conform to its express representation. ([Filing No. 21](#).) The Amended Complaint is brought on his own behalf, and on behalf of a proposed class consisting of all person or entities domiciled or residing in the United States who purchased or leased the year 2014 planter manufactured by Deere. Armstrong asserts, prior to purchasing the Planter, he reviewed and relied on two brochures published by Deere. The first brochure is Deere's December 2008 *Planting Equipment* product brochure, which marketed Deere's seed planters as "the only planter on the

market that can offer *even emergence*, correct population, uniform spacing, and speed to get the most production within the optimum window." *Id.* at 4 (emphasis added). The second brochure is Deere's September 2010 *Planting Equipment* product brochure, which promised its "single-piston, variable-stroke pump *uniformly applies liquid fertilizer*." *Id*. at 5 (emphasis added). The Amended Complaint asserts fifteen tort- and contract- based counts, specifically:

> **Count One**-breach of consumer and market protection statutes for all fifty states, including Indiana Code § 24-5-0.5-1 *et seq.*;
> **Count Two**-breach of Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA");
> **Count Three**-breach of express warranty;
> **Count Four**-breach of implied warranty of merchantability;
> **Count Five**-revocation of acceptance;
> **Count Six**-tortious interference with business relationships;
> **Count Seven**-constructive fraud;
> **Count Eight**-common law fraud;
> **Count Nine**-fraudulent misrepresentation;
> **Count Ten**-breach of contract;
> **Count Eleven**-implied covenant of good faith and fair dealing;
> **Count Twelve**-fraudulent concealment;
> **Count Thirteen**-negligence;
> **Count Fourteen**-negligent misrepresentation; and
> **Count Fifteen**-unjust enrichment.

*Id*.

On September 14, 2016, Deere moved to dismiss the Amended Complaint in its entirety for failure to state a claim. (Filing No. 24.) In response, Armstrong withdrew several of the claims alleged in the Amended Complaint, including the: breach of express warranty; breach of implied warranty of merchantability; revocation of acceptance; tortious interference with business relationships; breach of contract; breach of implied covenant of good faith and fair dealing; and negligence claims[1]. (Filing No. 30 at 1 n.1.)

---

[1] Accordingly, Counts Three, Four, Five, Six, Ten, Eleven and Thirteen are dismissed with prejudice.

## II. LEGAL ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## III. DISCUSSION

Deere asks the Court to dismiss the remaining claims alleged in the Amended Complaint: Count One-breach of consumer and market protection statutes for all fifty states, including Indiana and Illinois; Count Two-constructive fraud; Count Eight-common law fraud; Count Nine-fraudulent misrepresentation; Count Twelve-fraudulent concealment; Count Fourteen-negligent misrepresentation; and Count Fifteen-unjust enrichment. The Court will address each claim in turn.

**A. Choice of Law**

As an initial matter, the Court must determine which law governs Armstrong's claims. In a case within federal diversity jurisdiction, a federal district court applies the choice of law rules of the forum state. *Land v. Yamaha Motor Corp., U.S.A.*, No. IP 00-220-C H/G, 2001 WL 243296, at *2 (S.D. Ind. Mar. 8, 2001) (citations omitted). Accordingly, the Court will apply Indiana's choice of law rules in making its determination of which state's law governs the substantive issues.

Under Indiana law, when determining which law governs tort claims, courts look to the law of the place where the injury or loss occurred. *Id*. In contract cases, Indiana courts apply the "most intimate contacts" rule. *Eby v. York-Div., Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983) (citations omitted). Under the "most intimate contacts" rule, courts consider several factors, including: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Deere argues Indiana law applies to Armstrong's claims because Armstrong is an Indiana farmer; Armstrong purchased the Planter in Greenfield, Indiana; he utilized the Planter at his Indiana farm; and Armstrong's alleged injury occurred in Indiana. Deere notes the only connection to Illinois is Deere's headquarters. In his reply, Armstrong concedes that Indiana law applies to all claims, except the ICFA claim. ([Filing No. 30 at 14](#) n.2.) The Court concludes that Indiana law governs Armstrong's claims, and for reasons elaborated below, a determination regarding the ICFA claim is unnecessary because Armstrong has not pled with particularity his ICFA claim.

**B. Breach of Consumer and Market Protection Statutes, including Indiana and Illinois**

In Count One, Armstrong alleges that Deere's actions violated consumer and market protection statutes of all fifty states of the United States, including Ind. Code § 24-5-0.5-1 *et seq*.,

and Count Two alleges violations of Illinois' Consumer Fraud and Deceptive Trade Practices Act. Deere moves the Court to dismiss Counts One and Two of the Amended Complaint, arguing that Armstrong lacks standing to assert a breach of consumer protection claim under all fifty state statutes, and fails to state a claim under the Illinois consumer protection statute.

1. **Standing**

Article III of the Constitution requires that a plaintiff have standing to assert claims in federal court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, Armstrong bears the burden of proving: 1) he suffered an "injury in fact"; 2) the injury resulted from Deere's conduct; and 3) a favorable ruling would redress the injury. *Id.*

Deere relies on *Catlin* when asserting Armstrong lacks standing to sue under the consumer protection laws of any state other than Indiana because Armstrong is an Indiana farmer, Armstrong purchased the Planter in Indiana, and Armstrong's alleged injury occurred in Indiana. *See Catlin v. Hanser*, No. 1:10-CV-0451-LJM-DML, 2011 WL 1002736, at *8 (S.D. Ind. Mar. 17, 2011) (dismissing Plaintiff's consumer fraud claims, other than those brought under Indiana and California statutes, for lack of standing); *see also Crichton v. Golden Rule Ins. Co.,* 576 F.3d 392, 396 (7th Cir. 2009) (holding non-resident plaintiffs may only sue under the Illinois consumer fraud statute if the circumstances relating to the alleged fraudulent transaction occurred mostly in Illinois); *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 728 (N.D. Ill. 2015) (noting serious reservations about Plaintiff's standing to assert claims on behalf of unnamed, proposed class members under the laws of jurisdiction where Plaintiff has not suffered an injury).

In response, Armstrong argues that the question of whether he may pursue nationwide claims under multiple state statutes is not a standing issue, but rather a choice of law issue. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("choice-of-law principles has

nothing to do with *standing,* though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be"); *see also Arreola v. Godinez*, 546 F.3d 788, 795 (7th Cir. 2008) (noting, "it is best to confine the term 'standing' to the Article III inquiry and thus to keep it separate from the plaintiff's entitlement to relief or her ability to satisfy the Rule 23 criteria"). Armstrong contends that Deere's standing argument is premature and the Court should address standing at the class certification stage. *See Payton v. Cty. of Kane*, 308 F.3d 673, 681 (7th Cir. 2002) (holding plaintiffs who suffered injury in two Illinois counties may have standing to represent a class suing nineteen Illinois counties if plaintiffs fulfill all the requirements of Rule 23); *Burrow v. Sybaris Clubs Int'l, Inc.*, No. 13 C 2342, 2013 WL 5967333, at *3 (N.D. Ill. Nov. 8, 2013) (relying on *Ortiz v. Fireboard Corp.,* 527 U.S. 815, 831 (1999) when denying defendant's motion to dismiss for lack of standing because "the Supreme Court has instructed that class certification issues are 'logically antecedent' to Article III concerns, and thus may be resolved first.").

Armstrong's reliance on *Morrison*, *Arreola*, and *Payton* is misplaced because the injuries in those cases derive from a single policy or state law. *See Morrison*, 649 F.3d at 536 (the class action complaint alleges only violation of the ICFA); *Arreola*, 546 F.3d at 795 (the alleged "injury in fact" for both plaintiff and class members derived from the "Crutch Policy"); *Payton*, 308 F.3d at 682 (noting "these punitive representatives were personally injured by the operation of *the very same statute that caused the injuries to all* other members of the proposed class") (emphasis added). However, because Armstrong asserts personal injury only under Indiana and Illinois law, the Court concludes that it need not decide the issue of standing because Armstrong's allegations—under both Illinois and Indiana consumer protection statutes—are insufficient to state a claim for

7

consumer fraud. *See Baldwin*, 78 F. Supp. 3d at 728 (noting "[b]ecause [plaintiff's] allegations are ultimately insufficient to state a claim even under Illinois law the court concludes it need not decide the issue of whether [plaintiff] has standing to proceed under other state statutes, on the assumption that somebody he seeks to represent would have such standing.").

### 2. Indiana Deceptive Consumer Sales Act (IDCSA)

To state a claim under the Indiana Deceptive Consumer Sales Act ("IDCSA"), Armstrong must allege that Deere committed an uncured[2] or incurable[3] "deceptive act." IND. CODE § 24-5-0.5-4. IDCSA defines "deceptive act" as a supplier making "representations as to the subject matter of a consumer transaction," including any representation that the subject of a consumer transaction "has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have." IND. CODE § 24-5-0.5-3(b).

Deere argues that the Amended Complaint fails to state a claim for violation of the IDCSA because Armstrong does not allege the commission of a "deceptive act" by Deere. The Amended Complaint states:

> John Deere knew or should have known that the uneven distribution of fertilizer from its planters resulted in uneven emergence…John Deere knew that the *marketing materials and other express representations* by it or its agents would lead a reasonable consumer of its planters, including Plaintiff and Class members, to believe that its planters would provide even distribution of fertilizer and to rely on these representations of even distribution and emergence… John Deere knew or should have known that its planters were *not in conformity with its marketing materials and other express representations*…John Deere knew or should have

---

[2] A deceptive act is "uncured" if: 1) a consumer, damaged by the deceptive act, gave notice to the supplier; and 2) the supplier failed to either: (i) offer to cure within thirty days after notice; or (ii) cure within a reasonable time after the consumer accepted the supplier's offer to cure. IND. CODE § 24-5-0.5-2(a)(7).

[3] An "incurable" deceptive act is defined as "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." IND. CODE § 24-5-0.5-2(a)(8).

8

> known that Plaintiff and Class members would and did rely on these representations
> of even distribution and emergence.

([Filing No. 21 at 12](#)) (emphasis added). Deere contends that vague references to its "marketing materials and other express representations" are insufficient to allege a "deceptive act" and does not satisfy the heightened requirements under Federal Rule of Civil Procedure 9(b). FED. R. CIV. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Deere also argues, even putting the lack of specificity aside, the Court should dismiss Armstrong's IDCSA claim because the two brochures, which Armstrong relies on for the proposition that Deere made misrepresentations about the Planter, were published by Deere in 2008 and 2010—well before the Planter was designed and placed on the market.

Armstrong has not responded to Deere's contentions regarding the IDCSA claim, therefore, he has conceded these points. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession.); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made . . . concedes those points."); *Cintora v. Downey*, 2010 U.S. Dist. LEXIS 19763, at *12 (C.D. Ill. Mar. 4, 2010) ("The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession."); *Sequel Capital, LLC v. Pearson*, 2010 U.S. Dist. LEXIS 109087, at *22 (N.D. Ill. Oct. 12, 2010) (same); *Thomas v. Am. Family Mut. Ins. Co.*, 2008 U.S. Dist. LEXIS 92440, at *13–14 (N.D. Ind. Nov. 13, 2008) (same).

Even if Armstrong had addressed Deere's contention, the Court finds that IDCSA claim fails on the merits because the Amended Complaint does not allege a "deceptive act" or misrepresentation specifically regarding the 2014 Planter. Accordingly, without any allegations of

express representations or statements from a 2014 brochure that specifically address the Planter, Deere's motion to dismiss Count I, the IDCSA claim is **granted**.

### 3. Illinois Consumer Fraud and Deceptive Trade Practices Act (ICFA)

The ICFA protects consumers against "unfair or deceptive acts or practices," including "fraud," "false promise," and the "misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS 505/2. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012). To prevail on an ICFA claim, Armstrong must establish:

> (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.

*Avery*, 835 N.E.2d 850.

The Court dismisses Armstrong's ICFA claim for similar reasons as mentioned above; because the Amended Complaint fails to state a claim for breach of the ICFA. Count Two merely asserts:

> John Deere knew or should have known that its planters did not evenly distribute fertilizer… John Deere knew or should have known that the uneven distribution of fertilizer from its planters resulted in uneven emergence…Despite this knowledge, John Deere has failed to disclose the existence of this material information to Plaintiff and the Class at the time each of them purchased or leased the planters here at issue, and/or at the time they made warranty claims related to the defective planters. To the contrary, John Deere *made affirmative representations regarding the performance and reliability of the planter*… John Deere's acts and omissions constitute unfair or deceptive acts prohibited by the ICFA.

(Filing No. 21 at 15-16) (emphasis added). The existence of a deceptive act or practice is the crux of an ICFA claim, however, Armstrong's assertion regarding Deere's alleged deceptive act, is merely conclusory. *See Twombly*, 550 U.S. at 555. Armstrong does not present facts regarding any affirmative misrepresentations regarding the performance and reliability of the 2014 Planter, but concludes only that "Deere made affirmative representations regarding the performance and

reliability of the planters." Such a conclusory statement is insufficient to satisfy the pleading requirements of either Rule 8 or Rule 9. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (holding, under Rule 9(b) a plaintiff must state the "who, what, when, where, and how" of the alleged fraud); *Iqbal*, 556 U.S. at 678. Accordingly, because Count Two fails to provide any allegations of express representations or statements from a 2014 brochure that specifically address the Planter or any facts that would lead "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Deere's motion to dismiss Count Two is **granted**. *See Iqbal*, 556 U.S. at 678; *see also* De Bouse v. Bayer, 922 N.E.2d 309, 316 (2009) (denying plaintiff's consumer fraud by omission claim because "[a] consumer cannot maintain an action under the [ICFA] when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant).

**C. Count Seven-Constructive Fraud**

Count Seven alleges that Deere committed constructive fraud. "Constructive fraud arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Demming v. Underwood,* 943 N.E.2d 878, 892 (Ind. Ct. App. 2011) (quotations omitted). The elements of constructive fraud are:

> (i) a duty owing by the party to be charged to the complaining party due to their relationship; (ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*JMB Mfg., Inc. v. Child Craft, LLC*, No. 4:11-CV-0065-TWP-WGH, 2011 WL 4833094, at *3–4 (S.D. Ind. Oct. 12, 2011) (citations omitted).

Deere asks the Court to dismiss Armstrong's constructive fraud claim for two reasons. Deere first asserts that Armstrong has not alleged any relationship between them that would impose a duty to disclose. To assert a claim of constructive fraud under Indiana law, a plaintiff must prove "the existence of a duty by virtue of a special relationship between the parties ..." *Mudd v. Ford Motor Co.,* 178 Fed. Appx. 545, 547 (7th Cir.2006) (applying Indiana law). Normally, the "special relationship" is "fiduciary or confidential" in nature. *Id.* (citations omitted). Notably, duties do not arise out of "arms-length, contractual arrangement." *Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 125–26 (Ind. Ct. App. 1992); *see also Remmers v. Remmington Hotel Corp.,* 56 F.Supp.2d 1046, 1058 (S.D. Ind. 1999).

In response, Armstrong contends—because he is a long-standing Deere customer who relied on and was accustomed to the effectiveness of Deere planters—Deere had a fiduciary duty to disclose the new design of the 2014 Planter. *See Schmitt v. Beekay Development LLC,* 2008 WL 2691071, at *6 (S.D. Ind. July 3, 2008) ("With respect to the buyer-seller relationship, constructive fraud may arise where one party is in the unique possession of knowledge not possessed by the other and thus enjoys a position of superiority over the other.").

The Court agrees that the Amended Complaint alleges a buyer-seller relationship between Deere and Armstrong. Armstrong is a longstanding customer who purchased products from an *authorized* local Deere dealer. Accordingly, because the local dealer is an agent of Deere, a buyer-seller relationship exists. *See Mudd*, 178 Fed. Appx. at 547. In reply, Deere argues—even if a relationship exists between Armstrong and Deere—Armstrong failed to allege that when buying the Planter he expressly reposed a trust and confidence in Deere. *See* Scott v. Durham, No. 1:09-CV-348-PPS-RBC, 2011 WL 8969, at *3 (N.D. Ind. Jan. 3, 2011) ("even in a buyer-seller context, a duty to disclose does not necessarily arise."). A seller with superior knowledge has a duty to

disclose only when "the duty arises from the trust and reliance that one party *must repose* in the other." *Id.* (noting "concealment becomes fraud only when ... it appears that either one or each of the parties, in entering into the contract or other transaction *expressly reposes* a trust and confidence in the other") (emphasis added). Because Armstrong does not allege that he was *required* to place his trust in Deere, the Court finds that a duty to disclose did not arise. *See id*; *see also* Schmitt, 2008 WL 2691071, at *6 ("Indiana courts have held that there is a duty to disclose if the buyer makes specific inquiries about the condition on, the qualities of, or the characteristics of the property… that did not happen here") (citations and quotation marks omitted) (emphasis added).

Deere next argues that the constructive fraud claim fails to allege that it made any misleading representations about the 2014 Planter. The Court agrees and notes, as previously mentioned, any reliance on the 2008 and 2010 brochures for the proposition that Deere made false or misleading representations about the 2014 Planter is misplaced. Accordingly, because a duty to disclose did not arise and absent any allegations of express representations or statements from a 2014 brochure that specifically address the Planter, Deere's motion to dismiss Count Seven is **granted**.

## D. Count Eight-Common Law Fraud and Count Nine-Fraudulent Misrepresentation

Deere requests dismissal of Armstrong's common law fraud and fraudulent misrepresentation claims. To establish common law fraud, Armstrong must prove: (1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage

complained of. *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992) (citations omitted).

The elements for a fraudulent misrepresentation claim are similar. To prevail on a fraudulent misrepresentation cause of action, Armstrong must demonstrate that: (1) Deere made false statements of past or existing material facts; (2) Deere made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) Deere made the statements to induce Armstrong to act upon them; (4) Armstrong justifiably relied and acted upon the statements; and (5) Armstrong suffered injury. *See Wise v. Hays*, 943 N.E.2d 835, 840 (Ind. Ct. App. 2011).

Although Counts Eight and Nine specifically allege that "Deere either directly or through its agents represented to the world, Plaintiff, and Class members that the planters provided even distribution and emergence," this statement fails to identify "when" "where" and "how" Deere made the statement. *See DiLeo*, 901 F.2d at 627; ([Filing No. 21 at 23](), 24.) Armstrong attempts to remedy the defects by pointing to the 2008 and 2010 brochures. The Court again finds, however, that Armstrong's reliance on these brochures is without merit and insufficient to support a claim for common law fraud and fraudulent misrepresentation because the brochures do not regard the 2014 Planter. The 2008 and 2010 brochures were distributed prior to when the 2014 Planter became available for purchase. The 2008 and 2010 brochures do not contain any false statements or misrepresentations because Armstrong conceded, prior to purchasing the 2014 model Planter, that he had "used [] Deere planters for years without substantial problems." ([Filing No. 21 at 4]().) Accordingly, the Court **grants** Deere's motion to dismiss Counts Eight and Nine, Armstrong's common law fraud and fraudulent misrepresentation claims.

### E. Count Twelve-Fraudulent Concealment

Indiana common law recognizes a cause of action for fraudulent concealment. In effect, fraudulent concealment is a species of actual fraud and occurs where there is a "failure to disclose all material facts, by a party on whom the law imposes a duty to disclose..." *Scott v. Durham*, No. 1:09-CV-348-PPS-RBC, 2011 WL 8969, at *2 (N.D. Ind. Jan. 3, 2011). Similar to a constructive fraud claim, in order to prevail on a fraudulent concealment claim, Armstrong must allege some form of special relationship with Deere that justifies imposing a duty to disclose. *See JMB*, 2011 WL 4833094, at *2–3. The Court previously found that Armstrong does not have a special relationship with Deere that justifies imposing a duty to disclose. Accordingly, Deere's Motion to dismiss Count Twelve is **granted**.

### F. Count Fourteen-Negligent Misrepresentation

Deere next asks the Court to dismiss Armstrong's negligent misrepresentation claim. In Indiana, a defendant is liable for negligent misrepresentation when: 1) the defendant, in the course of his business "supplies false information for the guidance of others in their business transactions"; 2) the defendant fails to exercise reasonable care in communicating certain information; 3) the plaintiff justifiably relies upon the information supplied by the defendant; and 4) the plaintiff suffers pecuniary loss as a result. *Harrison Mfg., LLC v. Bienias*, No. 4:11-CV-00065-TWP, 2013 WL 6486668, at *6 (S.D. Ind. Dec. 10, 2013) (citations omitted). "The tort does not require intent to deceive." *Id.*

The Amended Complaint alleges that Deere is liable for negligent misrepresentation because "Deere made affirmative representations, as detailed in this Complaint's allegations, regarding the [Planter's] reliability and performance." ([Filing No. 21 at 29](Filing No. 21 at 29).) Armstrong again relies on the promotional materials disseminated in 2008 and 2010 when asserting "misrepresentation",

however, the Court previously found—and Armstrong conceded—that those brochures do not contain any false statements or misrepresentations. Accordingly, because Armstrong failed to allege that Deere made false statements about the Planter, the Court **grants** Deere's Motion to dismiss Count Fourteen.

## G. Count Fifteen-Unjust Enrichment

Lastly, Deere asks the court to dismiss Armstrong's claim for unjust enrichment. A claim for unjust enrichment "is a legal fiction invented by the common law courts in order to permit a recovery ... where the circumstances are such that under the law of natural and immutable justice there should be a recovery ..." *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (citation omitted). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Id.* (citation omitted). To prevail on a claim of unjust enrichment, a claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Id.*

Deere argues that Armstrong failed to "state facts demonstrating an actual wrong or misleading conduct." *See Hughes v. Chattem, Inc.*, 818 F. Supp. 2d 1112, 1124 (S.D. Ind. 2011) (noting plaintiff failed to "articulate *what* wrongful benefit inured to the defendants and *why* they should be granted the extraordinary remedy of an equitable claim for unjust enrichment") (emphasis added). Deere argues that Armstrong's unjust enrichment claim also fails because it does not derive from an "extraordinary circumstance," but merely amounts to a person who purchased a good that he is now dissatisfied with. *Id.* at 1125 (denying plaintiff's unjust enrichment claim for lack of an "extraordinary circumstance" where plaintiff reasonably expected to pay for certain goods, but then grew dissatisfied with the goods.).

In response, Armstrong argues that all three elements of an unjust enrichment claim are satisfied: (1) he conferred a benefit upon Deere by purchasing a planter; (2) Deere has retained the benefit that it realized as a result of the sale of that planter; and (3) Deere's conduct in retaining this benefit is wrong or unjust. ([Filing No. 30 at 32-33](#).) Armstrong asserts that this is not a situation where a purchaser is merely dissatisfied with a product. He contends that Deere benefitted from misrepresenting the performance of the Planter and selling and leasing the Planter at an artificially inflated value, causing Armstrong and the class members to over pay for the Planter. Armstrong refers the Court to *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001). In that case, the plaintiffs alleged the defendants sold them defective tires for the price of non-defective tires. Applying the same elements that this Court must apply, the *Bridgestone/Firestone* court held:

> If Plaintiffs can demonstrate as a factual matter that their Tires and/or Explorers are, in fact, defective and therefore worth less than they paid for them, then they (at least those who purchased their Tires or Explorers from one of Defendants or Defendants' agents) will have shown that Defendants obtained a benefit (a higher sale price) at the expense of Plaintiffs. The lack of a tread separation or a roll-over incident will not preclude Plaintiffs from maintaining at their unjust enrichment claim, and accordingly we hold that Defendants are not entitled to dismissal of this claim on that basis.

*Id.* at 1104.

The Court concludes that this is not a situation where a plaintiff simply "grew dissatisfied with the goods." There is no dispute that prior-models of the Planter uniformly applied liquid fertilizer, as advertised. Armstrong, as a long-standing customer of Deere planters, relied on the advertisements and performance of prior-models when purchasing the Planter. The purchase of the Planter, however, resulted in a decrease of profits, as well as a decrease in yield of Armstrong's

2,740 acres of corn crops—solely because Deere silently altered a key component of the Planter[4]. Deere concedes that a key component to maximizing production and yield when farming is "achieving even emergence." ([Filing No. 21 at 4](#).) Accordingly, because Armstrong bargained for a Planter with even distribution of fertilizer—similar to Deere's prior models—but received only a defective product that resulted in extraordinary loss of yield and profits, the Court **denies** Deere's motion to dismiss Count Fifteen. *See Hughes*, 818 F. Supp. 2d at 1124 (dismissing plaintiffs' unjust enrichment claim where plaintiffs failed to "allege extraordinary circumstances, much less that they did not receive the *benefit of their bargain*") (emphasis added).

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part**[5] Defendant Deere & Company's Motion to Dismiss. ([Filing No. 24](#).) The Court finds that the Amended Complaint fails to state a claim for breach of the Indiana Deceptive Consumer Sales Act; breach of Illinois Consumer Fraud and Deceptive Trade Practices Act; constructive fraud; common law fraud; fraudulent concealment; fraudulent misrepresentation; and negligent misrepresentation, and these claims are **dismissed with prejudice**. The Court, however, concludes that Armstrong has properly pled a state law claim for Count Fifteen-unjust enrichment and this claim survives the initial hurdle of a motion to dismiss.

**SO ORDERED**.

Date: 9/20/2017

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

---

[4] It appears that Armstrong does not possess a 2014 brochure explaining the new design of the Planter. ([Filing No. 30 at 25](#).)

[5] Because the Court finds that Armstrong has not properly pled any of his claims under the state consumer protection statutes, the Court need not discuss Deere's assertion that Armstrong is precluded from seeking injunctive relief.

Renae D. Steiner
HEINS MILLS & OLSON, P.L.C.
rsteiner@heinsmills.com

James W. Anderson
HEINS MILLS & OLSON, PLC
janderson@heinsmills.com

Christina Laun Fugate
ICE MILLER LLP
christina.fugate@icemiller.com

Judith S. Okenfuss
ICE MILLER LLP
judy.okenfuss@icemiller.com

Kevin B. Reidy
RILEY SAFER HOLMES & CANCILA LLP
kreidy@rshc-law.com

Sondra Hemeryck
RILEY SAFER HOLMES & CANCILA LLP
shemeryck@rshc-law.com

Jason Ruskin Reese
WAGNER REESE & CROSSEN, LLP
jreese@WagnerReese.com

Stephen M. Wagner
WAGNER REESE LLP
swagner@injuryattorneys.com